IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEVIN R. EDWARDS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil No. 08-685-DRH-CJP** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Kevin R. Edwards seeks judicial review of the final agency decision finding that he is not disabled and denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

## Procedural History

Plaintiff filed an application for benefits on July 20, 2004, alleging disability beginning on January 6, 2003. (Tr. 62). He claims disability due to carpal tunnel syndrome in both hands and elbows, bilateral rotator cuff problems, degenerative disc disease in the cervical spine, fibromyalgia and severe depression. (Tr. 14, 44). Plaintiff was insured for DIB through September 30, 2009. (Tr. 60).

---

[1] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Thus, plaintiff's DIB and SSI claims will be considered simultaneously, and most citations are to the DIB regulations out of convenience.

The application was denied initially and on reconsideration. At plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) M. Kathleen Gavin on October 25, 2007. (Tr. 377-403). ALJ Gavin denied the application for benefits in a decision dated May 13, 2008. (Tr. 12-20). Plaintiff's request for review was denied by the Appeals Council, and the May 13, 2008, decision became the final agency decision. (Tr. 3).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

### Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. Whether the ALJ failed to recognize limitations of no overhead lifting and no material handling on a frequent or constant basis when assessing the plaintiff's abilities on a function-by-function basis;

2. Whether the ALJ erred in not giving greater weight to the opinion of Dr. Amble, a psychologist who examined plaintiff at the request of the ALJ; and

3. Whether the ALJ erred in concluding that plaintiff's activities of daily living were inconsistent with the severity of his claimed mental impairment

### The Evidentiary Record

The Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record.

**1.    Hearing, October 25, 2007**

Plaintiff and vocational expert Lisa Courtney testified at the hearing. Plaintiff was represented at the hearing by attorney Gary J. Szczeblewski. (Tr. 377).

### Testimony of Plaintiff

Kevin R. Edwards was born on January 16, 1960. He was 5'10" tall and weighed about 155 pounds at the time of the hearing. He has an Associates Degree in General Studies. (Tr.

381-382).

Mr. Edwards previously worked at Continental Tire, building tires. He last worked in January, 2003. He stopped working because he had carpal tunnel surgery, tennis elbow and rotator cuff problems. (Tr. 383). Before that, he worked at Dillard's in sales. (Tr. 384).

Plaintiff now buys and sells antiques at some malls and at the Coin Flea Market. Another person goes with him to help out. On average, he spends 8 - 10 hours a week doing this. (Tr. 381, 383).

Plaintiff testified that he cannot work because he "live[s] in constant pain." (Tr. 385). He has fibromyalgia. He suffers from muscle spasms, and has tremors in his arms and hands. He stated that he "fight[s] depression and mental fatigue." *Id.* He has undergone surgery for carpal tunnel syndrome, tennis elbow and a rotator cuff tear, which have been successful. (Tr. 386-387). He had recently changed from Lexapro to Cymbalta because the Lexapro upset his stomach. Cymbalta helps, but not as much as Lexapro did. (Tr. 386).

Plaintiff testified that he was diagnosed with fibromyalgia in August, 2007. He experiences pain that seems to move to different parts of his body, such as his shoulders, back, hips and knees. He has daily muscle spasms in his upper and lower back, shoulders and arms. He lives with pain at level 5 to 6, but it sometimes goes to level 10. He is never free of pain. (Tr. 394-396).

As to physical capacity, plaintiff testified that he can sit for 35 to 45 minutes at a time, and he can stand for a similar amount of time. He can walk 3 to 4 blocks. He is able to pick up a gallon of milk, but must be careful because he does not have a good grip. He was not sure how much weight he could lift, but had recently undergone functional capacity testing. That testing usually takes 4 to 5 hours, but, according to Mr. Edwards, the testing was stopped after 2 hours because he could no longer do the required exercises. (Tr. 387-389).

Plaintiff testified that he is very depressed.  He has trouble eating and sleeping, and has problems concentrating and remembering.  Sometimes, he feels like he wants to drive his car into a bridge.  He had been seeing Dr. Lee for about a year at the time of the hearing.  (Tr. 389).

Plaintiff testified that he has panic or anxiety attacks every 2 or 3 days.  These attacks last an hour to an hour and a half, during which he is excited, nervous, shaking, and perspiring.  (Tr. 393-394).

The ALJ asked plaintiff to describe a typical day.  He stated that he gets up around 8:00 a.m., has water or tea, and walks around the house.  He usually lays back down because he is tired.  He gets up and fixes lunch.  He does housework, but cannot clean the whole house at one time.  He gets dressed every day.  He cooks and does grocery shopping.  He walks a couple of blocks for exercise.  He likes to watch movies, but it is hard for him to sit through a movie without taking a break to walk around.  He maintains relationships with some friends.  He reads newspapers occasionally.  (Tr. 300-303).

### Testimony of Vocational Expert

Lisa Courtney testified as a vocational expert.  Plaintiff made no objections to her qualifications.  (Tr. 380).

Ms. Courtney testified that plaintiff would be unable to perform the demands of his past relevant work.  The ALJ asked the expert to assume an individual who could perform light work with a sit/stand option, one to two step instructions, and no repetitive overhead work with the right arm.  According to Ms. Courtney, the individual could perform the work of assembler (2,500 jobs in the regional economy), inspector (2,500 jobs in the regional economy), or packer (1,400 jobs in the regional economy).  (Tr. 397-400).

The expert also testified that, if plaintiff's testimony were accepted, he would be unable to work 8 hours a day, 5 days a week, and would likely miss more than 2 days a month due to his

-4-

symptoms. In that case, he would not be able to hold a job for "any length of time." (Tr. 400).

Ms. Courtney also testified that, if Dr. Lee's functional capacity report were accepted, plaintiff would not have the ability to maintain employment. (Tr. 401-402).

**2.    Work History**

Plaintiff completed a Work History Report, which is located at Tr. 88-92. He had been working as a tire builder at General Tire Company from 1994 to January, 2003. That job required him to stand and use his arms and hands in repetitive motions all day.

From 1989 through 1994, he worked as a salesperson in a department store.

**3.    Medical records - Thomas W. Davis, M.D.**

Dr. Davis is an orthopedic surgeon who diagnosed plaintiff with bilateral carpal tunnel syndrome in May, 2003. He also diagnosed bilateral median and lateral epicondylitis (inflammation of the elbow). (Tr. 189-190). He performed carpal tunnel release surgery on the right arm on March 17, 2004, and on the left arm on July 21, 2004. (Tr. 193, 198). Mr. Edwards had good resolution of the symptoms in his hands following the surgeries. (Tr. 196-197, 199-200).

On September 21, 2004, a physician's assistant on staff in Dr. Davis' office noted that Mr. Edwards continued to have "major pain" in both elbows and in the left scapula. Plaintiff reported that his primary care physician had put him on an anti-depressant. The PA noted that Mr. Edwards seemed "both frustrated and depressed about his inability to return to work and about the day-to-day living with his pain." (Tr. 200).

On November 9, 2004, Dr. Davis noted that plaintiff continued to complain of symptoms related to bilateral epicondylitis, and that plaintiff felt that he could not return to work. Dr. Davis recommended conservative treatment, including occupational therapy. (Tr. 148).

**4.    Medical Records - Arthritic Clinic, LTD**

Plaintiff was seen by Dr. Akhter in this clinic beginning in December, 2006. (Tr. 259). He complained of left shoulder pain, muscle spasms in his thoracic spine and back on the left side, elbow pain and pain in the left knee. (Tr. 258). Dr. Akhter diagnosed fibromyalgia in January, 2007. He prescribed medication (Relafen and Robaxin), water therapy and physical therapy. (Tr. 254-255). In May, 2007, plaintiff reported that Relafen and Robaxin help him, but he had been to the emergency room and to another doctor with episodes of severe pain, for which he was given Demerol shots. Dr. Akhter added Ultracet to his medications. Plaintiff told Dr. Akhter that he did not want to go to physical or water therapy. (Tr. 251). In August, 2007, plaintiff reported that the medications were helping him "significantly." (Tr. 248).

**5.     Medical Records - Elbert Lee, M.D, treating psychiatrist**

Dr. Lee's records from November 27, 2006, through June 4, 2007, are located at Tr. 239-245. The treatment records are brief. When first seen, Dr. Lee noted a GAF of 60 and that his mood was depressed. Plaintiff complained of stress and difficulty sleeping. He had normal thought processes, but had decreased concentration and low energy. He was alert and oriented. He had fair insight and his judgment was intact. He did not have obsessive-compulsive symptoms. Dr. Lee noted that he was unemployed and had applied for "disability." He prescribed Lexapro and Trazodone.

Plaintiff was seen by Dr. Lee two more times. The record notes that Lexapro helped with his depression, but he still complained of poor sleep. Ambien was prescribed in addition to Lexapro at the last visit. (Tr. 239).

**6.     Medical Source Statement - Dr. Elbert Lee**

Dr. Lee submitted a Medical Source Statement, dated September 24, 2007. (Tr. 115-116). Dr. Lee indicated that Mr. Edwards had extreme limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, and to make judgments on

-6-

simple work-related decisions.  He also indicated extreme limitations in Mr. Edwards' ability to interact appropriately with supervisors and co-workers, and to respond appropriately to work pressures.  Dr. Lee found marked limitations in plaintiff's ability to interact appropriately with the public and to respond appropriately to changes in a routine work setting.  Dr. Lee wrote that plaintiff "has severe depression, pain, irritability [and is] unable to remember things."  (Tr. 116).

**7.      Psychological Report, Bruce Amble, Ph.D.**

Dr. Amble performed a psychological assessment on December 20, 2007, at the request of the ALJ.  His report is located at Tr. 347-358.  The assessment included the administration of the Minnesota Multiphasic Personality Inventory -2 (MMPI-2), the Bech Depression Inventory and the Bech Anxiety Inventory.

The results of the MMPI-2 were termed "invalid" by Dr. Amble.  (Tr. 349).  However, according to Dr. Amble, both Bech Inventories "are valid and both show the client to have severe mood problems in the clinical range of psychopathology."  (Tr. 350).  On the Bech Depression Inventory, Mr. Edwards had a raw score of 30 over 63, which is "in the severe range of mood disturbance for anxiety."  (Tr. 350).  On the Bech Anxiety Inventory, he had a raw score of 40 over 63, which Dr. Amble characterized as "in the serious clinical range."  (Tr. 350).

Dr. Amble's diagnostic impressions were that Mr. Edwards had a mood disorder, a pain disorder associated with both psychological factors and general medical condition, and anxiety disorder as shown by the Bech Inventory and clinical impression.  The mood and pain disorders were being treated with medication.  Dr. Amble opined that Mr. Edwards' "capacity to deal with the stress of day to day employment remains in question and he appears to have a lower stress tolerance which could exacerbate difficulties in an employment situation."  (Tr. 351).

**8.      Functional Capacity Evaluation - Brian Joyner, PT**

Mr. Joyner performed a functional capacity evaluation on October 11, 2007.  His report

and records are located at Tr. 312-35.  In his report, Joyner concluded that plaintiff "is able to work at a sedentary light physical demand level, with restrictions of no overhead lifting and no material handling on a frequent or constant basis."  (Tr. 312).  The limitation of "no overhead lifting" is again stated at Tr. 315.

**9.      Functional Capacity Assessment, State Agency Physician**

State agency physician Julio M. Pardo, M.D., completed a functional capacity assessment on November 9, 2004.  (Tr. 119-126).  He concluded that plaintiff was capable of performing light work in that he could frequently lift 10 pounds, occasionally lift 20 pounds, stand or walk for 6 out of 8 hours, sit with normal breaks for 6 out of 8 hours, and had no push/pull limitations.  He noted no postural, manipulative, visual, communicative or environmental limitations.

Dr. Pardo noted that plaintiff had bilateral carpal tunnel surgery, and had done well thereafter.

## Applicable Standards

To qualify for disability insurance benefits, a claimant must be "disabled."  In this context, "disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**  A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is

severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala*, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** *Bowen v. Yuckert*, **482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater*, **55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**  Thus, the Court must determine not whether Mr. Edwards is, in fact, disabled, but whether ALJ Gavin's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See,** *Books v. Chater*, **91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir.1995)).**  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997).**

## Analysis

Here, the ALJ properly followed the five step analysis. She concluded that plaintiff does have impairments of rotator cuff tear of the right shoulder, impingement syndrome on the left shoulder, bilateral epicondylitis, fibromyalgia, degenerative disc disease of the mid-cervical spine with mild neural foraminal narrowing and mild osteoarthritis, and anxiety. She also found that plaintiff's impairments do not meet or equal a listed impairment. (Tr. 15). Mr. Edwards does not challenge the finding that his condition does not meet or equal a listed impairment.

The ALJ found that plaintiff is unable to perform his past relevant work, and evaluated plaintiff's residual functional capacity. She concluded that plaintiff has the RFC to frequently lift 10 pounds, occasionally lift 20 pounds, stand or walk for 6 out of 8 hours, sit with normal breaks for 6 out of 8 hours with a sit/stand option, no repetitive overhead work, push/pull within his weight restrictions, only occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling, and no climbing ladders, ropes or scaffolding. In view of his mental impairments, plaintiff's RFC is limited to unskilled work, generally involving one or two step instructions in work settings without rigid deadlines, high production standards or contact with the general public. He is further limited to only superficial contact with supervisors and co-workers. (Tr. 16-17).

Because plaintiff's RFC represents less than a full range of light work, the ALJ considered the testimony of the vocational expert. The expert testified that Mr. Edwards could perform the requirements of jobs such as inspector, assembler, and packer. Those occupations have, respectively, 2,500, 2,500, and 1400 jobs in the regional economy. (Tr. 19-20).

**1.      Failure to recognize limitations of "no overhead lifting" and limited material handling**.

Plaintiff's first point is that the ALJ erred in her RFC findings by not recognizing restrictions of "no overhead lifting" and only limited material handling. This point relates to the

-10-

ALJ's understanding of the functional capacity examination that was performed by physical therapist Brian Joyner.

In her decision, ALJ Gavin rejected the state agency physician's conclusion that plaintiff was able to perform a full range of light exertion work, and concluded that some restrictions are appropriate. (Tr. 18). She stated that she gave "great weight to the functional capacity evaluation results from Brian Joyner." (Id.). The ALJ understood Joyner's evaluation to include a limitation of "no repetitive overhead lifting." (Id.). The ALJ included that limitation in her determination of RFC. (Tr. 16).

Mr. Edwards contends that the ALJ misinterpreted the results of Joyner's evaluation. In the summary cover letter which accompanied the report of his evaluation, Joyner stated that plaintiff "is able to work at a sedentary light physical demand level with restrictions of no overhead lifting and no material handling on a frequent or constant basis." (Tr. 313). Defendant argues that it was reasonable for the ALJ to read the phrase "on a frequent or constant basis" as modifying *both* overhead lifting and material handling. **See, Doc. 23, pp. 5-6.** That argument ignores the fact that Joyner's report, as opposed to the summary cover letter, states in several places that Mr. Edwards can do *no* overhead lifting. See, Tr. 314, 315, 324. At page 315, under the section labeled "Physical Demand Classification of Worker," Joyner wrote "No overhead lifting." Thus, it appears clear that, while the ALJ stated that she was giving "great weight" to Joyner's evaluation, she misinterpreted the results of his testing.

Further, the ALJ did not include any restriction on material handling in her RFC assessment or in the hypothetical question to the vocational expert. See, Tr. 16-17; 308-400.

It is well established that the ALJ must "build a bridge between the record" and her conclusion that the claimant is not disabled. ***Henderson v. Barnhart*, 349 F.3d 434, 436 (7th Cir. 2003)**. Where the ALJ fails to "articulate a reasoned basis for his ruling," remand is

-11-

appropriate *Id*. Here, the ALJ's misunderstanding of the results of Joyner's functional capacity evaluation led to errors in reasoning that undermine the validity of her decision. See, e.g., *Carradine v. Barnhart*, 360 F. 3d 751, 754, (7th Cir. 2004)(remand required where the ALJ's errors in reasoning resulted from his failure to understand the nature of plaintiff's condition).

**2.     Interpretation of Dr. Amble's report**

As is explained above, Dr. Amble performed a psychological assessment at the request of the ALJ. One of the tests administered, the Minnesota Multiphasic Personality Inventory -2 (MMPI-2), yielded invalid results. (Tr. 349).

ALJ Gavin discounted Dr. Amble's findings of "extreme limitations" as having been based on the MMPI-2. Defendant concedes that this was an incorrect conclusion. The other tests given by Dr. Amble were valid and showed " severe mood problems in the clinical range of psychopathology." Doc. 23, p. 6.

Defendant argues that the ALJ's error did not prejudice plaintiff because the ALJ nevertheless found that plaintiff had limitations in his mental functional capacity. While the ALJ did find some limitations related to mental impairments, it is entirely a matter of speculation to suggest that she would not have found additional limitations had she not erroneously discounted Dr. Amble's findings.

The ALJ's decision "cannot stand if is lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision must be based on testimony and medical evidence in the record, and not on her own "independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The fact that ALJ Gavin incorrectly discounted Dr. Amble's findings leaves her conclusions about plaintiff's mental limitations lacking adequate evidentiary support.

**3.     Evaluation of activities of daily living**

The ALJ observed that the extreme mental limitations noted by Dr. Amble were inconsistent with plaintiff's testimony that he socializes with friends and sometimes sells antiques at flea markets. (Tr. 15). Plaintiff argues that the fact that he is able to function at a low or moderate level on some days does not mean that he is not disabled. See, ***Carradine v. Barnhart***, **360 F.3d at 755.**

The ALJ's observations in this regard were related to her evaluation of plaintiff's mental limitations. As is explained above, that evaluation was lacking in evidentiary support due to her misreading of Dr. Amble's findings. These observations are likewise suspect because they were rendered in the context of the ALJ's misunderstanding of Dr. Amble's findings.

Because the decision denying plaintiff benefits was lacking in evidentiary support and contains errors in reasoning resulting from faulty understanding of the evidence, this Court concludes that this case should be remanded.

The Seventh Circuit has explained remand in a Social Security case as follows:

> Two sentences of 42 U.S.C. § 405(g) authorize remand in different situations. Sentence four authorizes the district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Sentence six allows the court to remand for the receipt of new evidence, but without entering a judgment determining the propriety of the decision previously rendered. Sullivan v. Finkelstein, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), holds that a sentence-four remand, which depends on a finding of error in the Commissioner's decision, is appealable under § 1291 as a final decision, while a sentence-six remand is not final or appealable because no adjudication has taken place. See also Forney v. Apfel, 524 U.S. 266, 118 S.Ct. 1984, 141 L.Ed.2d 269 (1998). A sentence-four remand concludes the litigation in the district court; any protest about the Commissioner's decision on remand requires a new suit. But a sentence-six remand works like a yo-yo; once the record has been enlarged, the district court finally decides whether the administrative decision is tenable.

***Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan***, **195 F.3d 975, 978 (7th Cir. 1999).**

Because the ALJ erred in her decision, remand should be pursuant to sentence four of

-13-

42 U.S.C. § 405(g).

## Recommendation

For the aforesaid reasons, this court recommends that the Commissioner's final decision be **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

Objections to this report and recommendation must be filed on or before **February 8, 2010.**

**Submitted: January 20, 2010.**

            **s/ Clifford J. Proud**
            **CLIFFORD J. PROUD**
            **UNITED STATES MAGISTRATE JUDGE**